

RM Auctions LLC
750 N State St. Floor 7
Chicago, IL 60654
(618) 352-7155

## GUARANTEE AUCTION AGREEMENT

THIS GUARANTEE AUCTION AGREEMENT (this "Agreement") is between R M Auctions LLC, an Illinois limited liability company and licensed auctioneer (Illinois License Number 444000586) ("Revelation"), and the undersigned seller ("Seller").

WHEREAS, Seller and Revelation desire for Revelation to conduct one or more public auctions and/or private sales (each and collectively, the "Sale") of certain personal property of Seller, on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, the parties agree as follows:

1. Engagement. Seller engages Revelation, as Seller's exclusive agent, to conduct the Sale of the personal property of Seller identified on Exhibit A (collectively, the "Assets"). The following additional provisions apply to the definition of the term "Assets", but only if the applicable box is checked:

    ☐ After the parties enter into this Agreement, Revelation will photograph, lot and catalog Seller's personal property and (a) if Exhibit A is blank, prepare an Exhibit A, or (b) if Exhibit A is not blank, confirm or prepare an updated Exhibit A. In either case, the parties will work together in good faith to agree upon and finalize the list of Assets.

    ☑ The term Assets will include all items on Exhibit A as well as all other personal property located within the Premises, including machinery, equipment, tooling, metal and other materials, forklifts, pallet racking, fixtures and inventory, but excluding any personal property that Seller and Revelation agree in writing is excluded from the Sale. Any and all intellectual property rights and molds are strictly excluded from the Assets for sale and are excluded from the term Assets.

2. Manner of Sale. Seller authorizes Revelation to sell the Assets at one or more public auctions and/or private sales to the highest bidder by the Final Sale date below. Although Revelation will endeavor to consult with Seller regarding the manner and method of the Sale, Revelation has the authority to conduct the Sale in the manner, and utilizing the methods, that Revelation deems, in its professional judgment, to be appropriate. All Sales will be absolute unless Revelation otherwise agrees in writing. Seller may not sell or otherwise dispose of any Asset, or remove any Asset from the Premises, without Revelation's express prior written consent. Seller must

redirect all inquiries regarding the Assets to Revelation. Revelation (a) does not guarantee that any Sale will be completed, (b) is not responsible for any purchaser that fails to complete a purchase and (c) has the right to decline to sell any Asset if Revelation believes the sale would expose Revelation or Seller, or both, to a claim of liability. Revelation currently intends to conduct a final Sale (the "Final Sale") on _____.

3. Allocation of Sale Proceeds.

   (a) The term "Sale Proceeds" means the total purchase price for the Assets (excluding sales tax and Buyer Premium), to the extent collected.

   (b) Subject to Section 3(c), the Sale Proceeds will be allocated between Revelation and Seller in the following order of priority:

   (i) *First*, $ 30,000 plus the cost of the surety bond required by the bankruptcy court to Revelation as an expense budget;

   (ii) *Second*, __0__% of all Sale Proceeds to Revelation as a commission; and

   (iii) *Third*, all remaining Sale Proceeds to Seller.

   (c) Revelation guarantees that Seller's share of the Sale Proceeds will be equal to at least $ 1,100,000 , with 10% of this amount (the "Deposit") being due and payable upon the bankruptcy court approval of this Agreement. Upon the full execution and delivery of this Agreement, Revelation shall pay the Deposit to its attorney's trust account and, following bankruptcy court approval, Revelation shall cause the Deposit to be paid to the Seller's Debtor in Possession account or to the Seller's bankruptcy attorney's trust account as may be required by the bankruptcy court. The Deposit is non-refundable and may be used by the Seller as permitted by the bankruptcy court.

4. Collection and Payment of Sale Proceeds. Revelation is responsible for billing and collections. Promptly following Revelation's collection of all proceeds from the Final Sale, and the removal of all sold Assets, Revelation will deliver to Seller an accounting of the Sale. Upon Seller's written agreement to the accounting, Revelation will remit to Seller its share of the Sale Proceeds, plus or minus any amounts that Seller is entitled to, or responsible for, pursuant to this Agreement. Notwithstanding the foregoing, (a) the guaranteed $1,100,000, less the sum of (i) the $110,000 deposit paid by Revelation, and (ii) any amounts paid by Revelation pursuant to Section 9 hereof, shall be paid to Seller by Revelation twenty-four (24) hours before the Final Sale date; and (b) any remaining amount owing to Seller under Section 3 hereof shall be paid to Seller within thirty (30) days after the Final Sale, provided that Revelation shall have the right to extend such payment for an additional fifteen (15) days if necessary due to delays in collecting proceeds from purchasers.

5. Buyer Premium. As is customary in the industry, Revelation intends to charge purchasers a "Buyer Premium" in an amount equal to 18% of the knockdown/hammer price. Seller is not entitled to any Buyer Premium if the Assets are sold for less than $1,230,000.00. However, if the Assets are sold for more than $1,230,000.00, the Buyer Premium will be split between Revelation and Seller entitling each to 9% of the Buyer Premium for the amount over

$1,230,000.00.

6. <u>Use of the Premises</u>. The Assets are located on the parcel or parcels of real property identified on <u>Exhibit B</u> (the "<u>Premises</u>"). Seller grants to Revelation, its employees, agents, contractors and invitees (including purchasers of the Assets) a license to use the Premises in connection with the Sale, including to store, prepare, display, sell, dispose of, remove, pack, load, ship, crate and/or rig the Assets. Seller will not charge Revelation, and agrees to indemnify Revelation against, any rent, storage fees, utilities or other fees associated with Revelation's use of the Premises in accordance with this Section. Seller will continue to provide security services to the Premises, at Seller's sole expense and consistent with past practices. Revelation has no obligation to maintain or repair the Premises, except to the extent of any damage that is the direct result of Revelation's negligence.

7. <u>Removal of the Assets</u>. Purchasers, and not Revelation, are responsible for removing, packing, loading, shipping, crating and rigging the Assets they purchase, and for disconnecting utilities (including any electric, gas, waste or water lines) to their Assets. However, Revelation will manage the removal process and will require riggers to provide Revelation with a certificate of insurance showing that the rigger carries comprehensive liability insurance in the amount of $1,000,000. Revelation will not have any liability for any damage to the Assets or any other personal property, except to the extent the damage is the direct result of Revelation's negligence. If any Assets remain unsold after the Final Sale, Seller agrees, upon Revelation's request, to convey those Assets to Revelation as purchaser, without additional consideration from Revelation. Revelation has no obligation to remove unsold Assets from the Premises and has the right to abandon the Assets. Revelation shall notify Seller within fifteen (15) days from the Final Sale date of its intention to abandon the unsold Assets. If Revelation does not seek to abandon the unsold Assets, Revelation shall be solely responsible for all costs relating to the removal and storage of the unsold Assets.

8. <u>Insurance</u>.

    (a) Revelation will obtain and maintain throughout the term of this Agreement, general liability insurance in the amount of $1,000,000. Revelation will provide Seller evidence of such insurance coverage upon request.

    (b) Seller will obtain and maintain throughout the term of this Agreement: (i) general liability insurance in the amount of $1,000,000; and (ii) fire and extended coverage insurance in the amount of the full insurable replacement value of the Assets. Seller will provide Revelation evidence of such insurance coverage upon request. If any Assets are lost or damaged by fire or other casualty, or by theft or vandalism, Revelation will be entitled to receive a portion of the insurance proceeds up to the sum of the Deposit (to the extent paid), plus Revelation's expense budget, plus all additional amounts paid by Revelation to Seller or Seller's creditors pursuant to the terms of the guarantee in paragraph 3(c) hereof.

9. <u>Satisfaction of Liens</u>. If a creditor or alleged creditor has or makes a claim for the payment of sums due (each, a "<u>Claim</u>") in connection with any lien, mortgage, pledge, security interest or charge of any kind against one or more Assets (collectively, "<u>Liens</u>"), Seller must use its best efforts to expeditiously resolve, settle or pay the amount of the Claim so as to discharge

all Liens associated with the Assets and to obtain a full and complete release thereof. Revelation may, in its discretion and as long as the Claim amount is correct, pay Seller's creditors directly, in which case the amount of such payments will reduce the amount of the Deposit payable to Seller, or otherwise be deducted against Seller's share of the Sale Proceeds.

10. <u>Representations, Warranties and Covenants of Seller</u>. Seller represents, warrants and covenants to Revelation as follows:

(a) Seller has all requisite right, power, capacity and authority to enter into this Agreement, the person executing this Agreement on behalf of Seller is duly authorized to do so, and this Agreement constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms. This Agreement however is subject to bankruptcy court approval.

(b) Seller has performed (or will perform, prior to the Sale) all acts necessary to sell, transfer and deliver good and marketable title to the Assets free and clear of all Liens, and agrees to defend each purchaser's title therein against any person or entity (including any governmental authority) who may bring a Claim or otherwise seek to enforce a Lien.

(c) Revelation has no obligation whatsoever to store, handle, treat, dispose of, transport or remove any Hazardous Substances that may be located at the Premises or otherwise associated with the Assets. The term "<u>Hazardous Substances</u>" means, collectively, any chemical, solid, liquid, gas or other substance having the characteristics identified in, listed under or designated pursuant to: (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. 9601(14), as a hazardous substance; (ii) the Resource, Conservation and Recovery Act, 42 U.S.C. 6903(5) and 6921, as a hazardous waste; or (iii) any other laws, statutes or regulations of a government or political subdivision or agency thereof, as presenting an imminent and substantial danger to the public health or welfare or to the environment, or as otherwise requiring special handling, collection, storage, treatment, disposal or transportation.

11. <u>Representations and Warranties of Revelation</u>. Revelation represents and warrants to Seller that it has all requisite right, power and authority to enter into this Agreement, the person executing this Agreement on behalf of Revelation is duly authorized to do so, and this Agreement constitutes a legal, valid and binding obligation of Revelation enforceable against Revelation in accordance with its terms.

12. <u>Assignment of Service Agreements</u>. To the extent in Seller's possession or control, and to the extent permitted, Seller will assign to each purchaser, without additional consideration, all service agreements, warranties, maintenance agreements, manuals, plans and other similar documents with respect to the Assets sold to such purchaser.

13. <u>Advertising</u>. Seller authorizes Revelation to use Seller's name, without additional consideration, in advertising and promotional materials pertaining to the Sale. Revelation may also state both in its advertising of the Sale and at the Sale that all Assets are being sold AS IS, WHERE IS AND WITH ALL FAULTS, and otherwise to include any disclaimers of

warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose. Seller acknowledges and agrees that Revelation: (a) has no knowledge with respect to, and no obligation to investigate, any Asset's merchantability or fitness for a particular purpose; and (b) has no duty to comply with the relevant provisions of the secured transaction laws (if applicable), including delivery of any requisite notice to third parties, as it is Seller's responsibility to ensure every aspect of the Sale complies with such laws and is commercially reasonable (if applicable). Seller grants Revelation a royalty-free, non-exclusive license to use its trademarks and/or logos throughout the world in advertising and promotional materials pertaining to the Sale until the Final Sale date.

14. <u>Term; Termination</u>. This Agreement shall commence upon the date of the last signature below and shall continue in effect until Revelation has collected all proceeds from the Final Sale, all sold Assets have been removed, and the Sale Proceeds have been paid in accordance with this Agreement, unless earlier terminated in accordance with this Section. If a party breaches or defaults in the performance of any obligation under this Agreement, and if the breach or default remains uncured by the defaulting party for 14 days after the other party has given written notice of default, the non-defaulting party will have the right to terminate this Agreement.

15. <u>Indemnification by Seller</u>. Seller agrees to indemnify, defend and hold harmless Revelation and its affiliates, and their respective directors, officers, employees, agents, successors and assigns, against all claims, demands, liabilities, judgments, damages, settlements, costs and expenses (including court costs and attorneys' fees) (collectively, "<u>Losses</u>") incurred by them, to the extent arising out of or related to: (a) any breach or non-fulfillment of any representation, warranty or covenant of Seller under this Agreement; (b) any negligent or more culpable act or omission of Seller or its employees, contractors or agents in connection with this Agreement; (c) Seller's violation of any applicable law, rule or regulation; (d) any Claims and/or Liens, including any claim by a third party for commissions allegedly due and owing in connection with the Sale; and/or (e) any environmental action being brought (i) because the Assets allegedly were involved in, or are somehow related to, the storage, handling, treatment, disposition, generation or transportation of Hazardous Substances, or (ii) against Revelation in connection with any remedial actions associated with the Assets or the Premises.

16. <u>Indemnification by Revelation</u>. Revelation agrees to indemnify, defend and hold harmless Seller and its affiliates, and their respective directors, officers, employees, agents, successors and assigns, against all Losses incurred by them, to the extent arising out of or related to any third-party claim resulting from: (a) any breach or non-fulfillment of any representation, warranty or covenant of Revelation under this Agreement; (b) any negligent or more culpable act or omission of Revelation or its employees, contractors or agents in connection with this Agreement; and/or (c) Revelation's violation of any applicable law, rule or regulation.

17. <u>Limitation of Liability</u>. IN NO EVENT SHALL REVELATION BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE OR ENHANCED DAMAGES, LOST PROFITS OR REVENUES, OR DIMINUTION IN VALUE, ARISING OUT OF OR RELATED TO THIS AGREEMENT, REGARDLESS OF (A) WHETHER SUCH DAMAGES WERE FORESEEABLE, (B) WHETHER OR NOT REVELATION WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, (C) THE

LEGAL OR EQUITABLE THEORY (CONTRACT, TORT OR OTHERWISE) UPON WHICH THE CLAIM IS BASED OR (D) THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE. IN NO EVENT SHALL REVELATION'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EXCEED THE TOTAL OF THE AMOUNTS RECEIVED BY REVELATION IN CONNECTION WITH THIS AGREEMENT.

18. <u>Bulk Sales Laws; Tax Matters</u>. The parties waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the Sale of the Assets; it being agreed that any liabilities arising out of the failure to comply with such laws are Seller's sole responsibility. Revelation will collect and remit any sales taxes required to be charged in connection with the Sale of the Assets. Revelation is not responsible for the payment of any personal property taxes associated with the Assets.

19. <u>No Partnership</u>. Revelation is not a partner of or joint venturer with, or an investor or member of any enterprise with, Seller in the conduct of Seller's business, or otherwise. This Agreement establishes a relationship solely between a seller and an auctioneer as to certain services that are to be rendered.

20. <u>Notices</u>. All notices and other communications hereunder shall be in writing and shall be deemed to have been given on the date sent by e-mail (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient, and (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (return receipt requested); or (c) on the third day after the date mailed if sent by certified or registered mail (return receipt requested, postage prepaid). Such communications must be sent: if to Revelation, at its address set forth above; or if to Seller, at its address set forth on the signature page (or such other address as a party may specify from time to time by notice to the other party in accordance with this Section).

21. <u>Governing Law; Jurisdiction</u>. This Agreement and the parties' respective rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without regard to the conflict-of-laws principles thereof. Seller irrevocably and unconditionally consents and submits to the personal jurisdiction of the state and federal courts located in Miami-Dade County, Florida for any action, suit or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with this Agreement, whether in contract, tort or otherwise.

22. <u>Assignment</u>. Seller may not assign or delegate any of its rights or obligations under this Agreement without Revelation's prior written consent. This Agreement is binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

23. <u>Entire Agreement; No Reliance</u>. This Agreement contains all the terms agreed upon between the parties with respect to the subject matter hereof. In entering into this Agreement, no party has relied upon any promise, agreement, representation, understanding,

communication or consideration except as expressly set forth in this Agreement.

24. <u>Amendments and Waivers</u>. No amendment or waiver of this Agreement shall be of any force unless such amendment or waiver is in writing and, in the case of an amendment, signed by both parties, or in the case of a waiver, signed by the waiving party.

*[Signature page follows]*

*[Signature page to Guarantee Auction Agreement]*

**SELLER:**

Signature: *Carlos J. Hermida*

Title: CEO

Company Name: ESE Industries, Inc.

Date:

Address: 9130 South Dadeland Boulevard Miami, FL 33156

Email: c.hermida@ese-industries.com

**REVELATION:**

Signature: *Tanner Arnold*

Title: VP of Asset Management

Date: 08 / 01 / 2024

# EXHIBIT A
## ASSETS

| Asset # | Property Description | | Date In Service | 2023 Mths | Original Cost |
|---|---|---|---|---|---|
| | **Furniture** | | | | |
| 1 | CHEMICAL CABINETS | F | 4/22/2015 | 0 | 800.00 |
| 2 | CONFERENCE TABLE CHAIR 1 | F | 8/4/2015 | 0 | 83.00 |
| 3 | CONFERENCE TABLE CHAIR 2 | F | 8/4/2015 | 0 | 83.00 |
| 4 | CONFERENCE TABLE CHAIR 3 | F | 8/4/2015 | 0 | 83.00 |
| 5 | U SHAPED DESK | F | 8/4/2015 | 0 | 409.00 |
| 6 | L- SHAPED DESK 1 | F | 8/5/2015 | 0 | 297.00 |
| 7 | U SHAPED DESK 2 | F | 8/5/2015 | 0 | 297.00 |
| 10 | CONFERENCE TABLE | F | 8/6/2015 | 0 | 600.00 |
| 11 | CONFERENCE TABLE CHAIR 4 | F | 8/6/2015 | 0 | 83.00 |
| 12 | CONFERENCE TABLE CHAIR 5 | F | 8/6/2015 | 0 | 83.00 |
| 13 | CONFERENCE TABLE CHAIR 6 | F | 8/6/2015 | 0 | 83.00 |
| 14 | CONFERENCE TABLE CHAIR 7 | F | 8/6/2015 | 0 | 83.00 |
| 15 | CONFERENCE TABLE CHAIR 8 | F | 8/6/2015 | 0 | 83.00 |
| 16 | FURNITURE FOR APT | F | 11/17/2016 | 11 | 1,981.00 |
| 19 | OFFICE FURNITURE - JASPAR | F | 5/3/2016 | 4 | 1,270.00 |
| 21 | DESK CHAIRS (4) | F | 9/2/2016 | 8 | 231.00 |
| 22 | REFRIGERATOR | F | 12/15/2016 | 11 | 490.00 |
| | **Furniture** | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 45 | MSI WORKSTATION SERIES | F | 2/11/2016 | 0 | 1,932.00 |
| 72 | MSI WORSTATION LAPTOP NV | F | 6/8/2017 | 0 | 1,799.00 |
| 86 | MOBILE WORKSTATION | F | 11/17/2018 | 11 | 2,802.00 |
| 90 | INDUSTRIAL PACKING TABLE | F | 7/23/2019 | 12 | 1,730.00 |
| 101 | DRAFT TABLE | F | 1/6/2020 | 12 | 280.06 |
| 102 | OFFICE DESKS | F | 2/3/2020 | 12 | 1,108.90 |
| 103 | 12 IND PACKING TABLES | F | 9/29/2020 | 12 | 5,283.27 |
| 261 | DELUXE FOLDING TABLE - 72 X 30", FIXED HEIGHT, LIGHT GRAY (2) | F | 2/16/2021 | 12 | 360.00 |
| 262 | SKYVIEW STACK CHAIR – BLACK (8) | F | 2/16/2021 | 12 | 920.00 |
| | | | | | |
| 264 | Mobile Heavy-Duty Packing Table | F | 4/1/2021 | 12 | 1,084.05 |
| 265 | #REF! | F | 4/1/2021 | 12 | 846.16 |
| 266 | #REF! | F | 4/6/2021 | 12 | 266.00 |
| 267 | #REF! | F | 5/25/2021 | 12 | 4,245.00 |
| 268 | #REF! | F | 5/25/2021 | 12 | 798.00 |
| 313 | Shelving | F | 3/16/2022 | 12 | 5,187.63 |
| 311 | Industrial Tables | F | 4/13/2022 | 12 | 7,150.01 |
| 314 | STAIR UNIT,ALUM,3 TO 4 STEPS | F | 5/5/2022 | 12 | 1,838.07 |
| | Shelving | F | 6/2/2023 | 7 | 1,631.33 |
| | Storage Cabinet | F | 10/17/2023 | 2 | 797.80 |
| | Shelving-heavy duty | F | 1/10/2024 | | 1,765.00 |
| | **Furniture** | | | | |
| | Shelving-wire | F | 1/17/2024 | | 939.40 |

|  |  |  |  |  | 54,047.68 |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  | Manufacturing Equipment |  |  |  |  |
|  |  |  | Date In | 2023 |  |
| Asset # | Property Description |  | Service | Mths | Cost |
| 17 | FACTORY CRANE | ME | 1/11/2016 | 0 | 204.00 |
| 20 | DYNA 13214 SANDER | ME | 7/8/2016 | 6 | 597.00 |
| 27 | LUG PRESS | ME | 11/2/2016 | 10 | 1,712.00 |
| 35 | S125 STATING CUTTING SYSTE | ME | 12/15/2015 | 0 | 71,626.00 |
| 63 | OVERHEAD CRANE | ME | 4/26/2017 | 12 | 859.00 |
| 62 | DMU 85 MONOBLOCK | ME | 7/21/2017 | 12 | 590,585.00 |
| 70 | WHELL TEST RING | ME | 9/15/2017 | 12 | 1,364.00 |
| 65 | ROBOT ENCLOSURE | ME | 12/30/2017 | 12 | 2,955.00 |
| 66 | ROBOT M20IB/25 | ME | 12/31/2017 | 12 | 8,507.00 |
| 78 | ROBOT M-20iB/25 | ME | 1/10/2018 | 12 | 64,621.00 |
| 76 | ROBOT ENCLOSURE | ME | 2/22/2018 | 12 | 2,336.00 |
| 79 | SPINDE MOTOR FOR ROBOT | ME | 7/4/2018 | 12 | 4,441.00 |
| 75 | FORKLIFT MODEL S2262B4 | ME | 8/3/2018 | 12 | 4,899.00 |
| 77 | ROBOT ENCLOSUE -VACUUM | ME | 8/4/2018 | 12 | 6,419.00 |
|  | Furniture |  |  |  |  |
| 89 | DIGITAL MICROSCOPE | ME | 10/18/2018 | 12 | 1,402.00 |
| 80 | TFP MACHINE | ME | 11/16/2018 | 12 | 293,994.00 |

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| 91 | CNC CHUCK | ME | 3/27/2019 | 12 | 10,974.00 |
| 96 | IMPACT TEST RIG | ME | 5/4/2019 | 12 | 4,135.00 |
| 95 | CORNERING TEST MACHINE | ME | 7/1/2019 | 12 | 42,140.00 |
| 97 | LOAD CELL - TRANSDUCER TE | ME | 7/18/2019 | 12 | 1,158.00 |
| 98 | Main Control System | ME | 8/10/2019 | 12 | 11,008.00 |
| 262 | MANUFACTURING ELECTRONICS | ME | 1/1/2020 | 12 | 21,282.00 |
| 259 | Pot Hole Test Ring | ME | 1/1/2020 | 12 | 2,773.80 |
| 124 | Shrink Fit Machine | ME | 1/17/2020 | 12 | 6,942.28 |
| 175 | MAIN CONTROL SYSTEM - UPGRADES | ME | 1/22/2020 | 12 | 789.00 |
| 176 | Resin Injection Pump - New | ME | 2/28/2020 | 12 | 40,158.98 |
| 209 | Tool Box | ME | 3/21/2020 | 12 | 560.37 |
| 128 | Flat Panel Press | ME | 6/1/2020 | 12 | 178,454.05 |
| 258 | Altas TC 221 Tire Changer | ME | 6/29/2020 | 12 | 1,295.00 |
| 202 | Consew Bobbin Threath Winder | ME | 9/25/2020 | 12 | 3,252.04 |
| 115 | Faro Quantun S 2.5m axis portab | ME | 9/29/2020 | 12 | 101,307.21 |
| 226 | Wheel Press Frame 1 | ME | 9/30/2020 | 12 | 30,688.51 |
| 113 | Gravity Feed Vertical Band Saw | ME | 10/31/2020 | 12 | 2,200.00 |
| 126 | Vertical Milling Machine | ME | 10/31/2020 | 12 | 6,200.00 |
|  |  |  |  |  |  |
|  | **Furniture** |  |  |  |  |
| 123 | Rota -S Flex 700 Lathe Chuck | ME | 12/7/2020 | 12 | 23,599.00 |
| 206 | Power Lift/Lifting Magnet | ME | 12/10/2020 | 12 | 1,973.87 |
| 208 | Steel Granty Crane | ME | 12/14/2020 | 12 | 3,978.63 |

| 105 | DMG MORI NVX7000 VERTICAL MACH | ME | 12/31/2020 | 12 | 379,743.55 |
|---|---|---|---|---|---|
| 289 | Wheel Press Frame 1-Upgrades | ME | 1/1/2021 | 12 | 35,713.84 |
| 283 | Straddle Legs Stacker | ME | 1/21/2021 | 12 | 1,299.00 |
| 275 | Regloplas Model P180S | ME | 1/24/2021 | 12 | 24,810.00 |
| 284 | Tool Cart | ME | 1/26/2021 | 12 | 809.16 |
| 105 | DMG MORI NVX7000 VERTICAL MACH | ME | 1/31/2021 | 12 | 9,061.50 |
| 272 | Oven | ME | 2/10/2021 | 12 | 6,849.65 |
| 269 | Chiller SVI-10000-M | ME | 3/5/2021 | 12 | 15,379.74 |
| 282 | Spill Containement Pallet | ME | 3/12/2021 | 12 | 1,427.97 |
| 285 | Static Cutting System-Upgrades | ME | 3/29/2021 | 12 | 3,595.60 |
| 271 | Mahr Metering System | ME | 4/15/2021 | 12 | 125,893.43 |
| 288 | Wabash MPI | ME | 4/26/2021 | 12 | 179,904.00 |
| 277 | Fans for Shop | ME | 4/28/2021 | 12 | 1,036.00 |
| 273 | Regloplas Model P180M Temp Cont | ME | 6/24/2021 | 12 | 23,979.94 |
| 280 | Power Lift/Lifting Magnet 2 | ME | 7/2/2021 | 12 | 1,978.42 |
| 278 | Forklift | ME | 7/22/2021 | 12 | 10,500.00 |
| 279 | Horizontal Band Saw | ME | 7/28/2021 | 12 | 1,922.45 |
| 281 | Shelving | ME | 8/13/2021 | 12 | 4,141.47 |
| 274 | Regloplas Model P180M Temp Cont | ME | 10/14/2021 | 12 | 23,979.94 |
| | **Furniture** | | | | |
| 287 | Vacuum Pump | ME | 10/23/2021 | 12 | 3,886.86 |
| 300 | Cold Jet Dry Ice Blaster | ME | 12/1/2021 | 12 | 33,450.00 |
| 276 | Resin Injection Pump - New - Upgrade | ME | 1/1/2022 | 12 | 7,832.00 |
| 290 | Wheel Press Frame 2 | ME | 1/5/2022 | 12 | 42,283.29 |

| | | | | | |
|---|---|---|---|---|---|
| 304 | Powder Spray Enclosure | ME | 2/8/2022 | 12 | 21,509.00 |
| 306 | Wagner Box Feed Gun (X1) | ME | 2/8/2022 | 12 | 3,822.00 |
| | | | | | |
| 320 | Wheel Press Frame 1-Upgrades - 2022 | ME | 4/6/2022 | 12 | 5,215.56 |
| 303 | Powder Curing Oven | ME | 4/11/2022 | 12 | 45,320.65 |
| 307 | 5 Degree Sliding Gage | ME | 4/18/2022 | 12 | 2,487.99 |
| 310 | Defiibilator | ME | 5/3/2022 | 12 | 1,250.00 |
| 308 | Air Blow Gun with Composite Han | ME | 5/5/2022 | 12 | 444.35 |
| 301 | Ace CSJ 400 XL CNC Turning Ctr | ME | 5/12/2022 | 12 | 68,468.47 |
| 302 | Takisawa Taiwan VTL-1100M VTC | ME | 5/31/2022 | 12 | 447,597.36 |
| 95-22 | Cornering Machine-2022 Upgrades | ME | 6/16/2022 | 12 | 682.84 |
| | | | | | |
| 309 | Band Saw | ME | 9/29/2022 | 12 | 3,576.69 |
| 305 | Tumbler-Vibr Deburr & Finishing | ME | 9/30/2022 | 12 | 106,699.33 |
| | | | | | |
| 80-22 | TFP-2022 UPGRADES | ME | 11/18/2022 | 12 | 868.00 |
| 315 | Tool Cart | ME | 11/18/2022 | 12 | 1,633.34 |
| | | | | | |
| | **Furniture** | | | | |
| | Cornering Machine-2023 Upgrades | ME | 1/17/2023 | 11 | 3,527.00 |
| | 12" cast iron 2 piece adjustable jaw chuck | ME | 1/27/2023 | 11 | 2,391.68 |
| | Single-Station Fixed-Jaw Vise (Takisawa accessory) | ME | 1/31/2023 | 11 | 3,999.90 |
| | MOBILE HEAVY-DUTY PACKING TABLE - machining | ME | 2/15/2023 | 10 | 965.88 |
| | Tool cart | ME | 2/22/2023 | 10 | 807.90 |

| Asset # | Property Description | | Date In / Service | Mths | Cost |
|---|---|---|---|---|---|
| | IMPACT TEST RIG-2023 Upgrades | ME | 2/23/2023 | 10 | 2,249.43 |
| | | | | . | |
| | Guage (go/no go) | ME | 3/24/2023 | 9 | 886.85 |
| | 4 PLASTIC AV CART WITH CABINET - 27 X 18 X 3 | ME | 7/7/2023 | 6 | 1,268.60 |
| | Oven | ME | 7/13/2023 | 6 | 2,265.01 |
| | Wheel Press Frame Upgrades 2023 | ME | 8/8/2023 | 5 | 1,064.20 |
| | Hopper | ME | 8/10/2023 | 5 | 1,753.79 |
| | Air Dryer | ME | 8/16/2023 | 4 | 3,300.00 |
| | Side brace table | ME | 10/13/2023 | 3 | 1,156.40 |
| | | | | | |
| | DeMold Table | ME | 1/12/2024 | | 1,869.39 |
| | Height Guage & Outside Mic Set | ME | 1/17/2024 | | 1,939.00 |
| | | | | | |
| | Wheel Trimming Fixture | ME | 4/11/2024 | | 1,283.09 |
| | | | | | 3,350,305.27 |
| | | | | | |
| | **Furniture** | | | | |
| | | | | | |
| | | | | | |
| | Office Equipment | | | | |
| | | | Date In | 2023 | |
| Asset # | d Property Description | | Service | Mths | Cost |
| 8 | AC-CANBY 8000 BTU PORTABL | OE | 8/4/2015 | 0 | 265.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9 | AC UNIT | OE | 8/5/2015 | 0 | 530.00 |
| 18 | PRESSURE CLEANER | OE | 4/26/2016 | 4 | 799.00 |
| 28 | FLIR E4INFRARED CAMERA | OE | 8/1/2014 | 0 | 908.00 |
| 39 | | | | | |
| 40 | TOSHIBA LAPTOP | OE | 6/25/2015 | 0 | 999.00 |
| 41 | INSIGNIA - 48 CLASS (47.6 Diag) | OE | 8/6/2015 | 0 | 403.00 |
| 42 | LENOVO IDEACENTER 700 desk | OE | 11/23/2015 | 0 | 628.00 |
| 43 | ACER 5271HL DBID 27 Monitor | OE | 11/23/2015 | 0 | 160.00 |
| 44 | LENOVO IDEAPAD Y700-17 LAP | OE | 1/15/2016 | 0 | 1,292.00 |
| 46 | PRINTERS | OE | 4/9/2016 | 0 | 223.00 |
| 47 | ASUS CHROMEBOXM004U | OE | 7/14/2016 | 0 | 185.00 |
| 48 | ACERB KA240H BD 24 INCH | OE | 7/15/2016 | 0 | 125.00 |
| 49 | LG 24 FULL HD IPS MONITOR | OE | 7/27/2016 | 0 | 170.00 |
| 50 | ASUS CHROMEBOX-M004U DES | OE | 9/10/2016 | 0 | 187.00 |
| 51 | | | | | |
| 52 | ASUS C100PADB02 CHROMEBO | OE | 11/17/2016 | 0 | 277.00 |
| | Furniture | | | | |
| 71 | LAPTP - VC | OE | 1/31/2017 | 0 | 1,052.00 |
| 84 | LAPTOP FOR ADAM | OE | 6/11/2018 | 5 | 2,049.00 |
| 85 | COMPUTER FOR ARAFAT | OE | 9/5/2018 | 8 | 2,141.00 |
| 87 | PRO2 RAISE 3D PRINTER | OE | 11/27/2018 | 12 | 4,089.00 |
| 204 | Freezer - Jasper TV and Appliances | OE | 9/11/2020 | 12 | 854.93 |
| 247 | Michael C. Computer and Computer Warranty - Listed on one receipt (Total 731.68) | OE | 2/3/2020 | 12 | 663.39 |
| 248 | Michael C. Computer and Computer Warranty | OE | 2/3/2020 | 12 | 68.29 |

| | | | | | |
|---|---|---|---|---|---|
| | - Listed on one receipt (Total 731.68) | | | | |
| 249 | Computer Screens | OE | 2/5/2020 | 12 | 426.45 |
| 250 | | | | | |
| 251 | Monitor for Mirmalad | OE | 4/16/2020 | 12 | 211.07 |
| 252 | Keyboard for Leroy | OE | 5/12/2020 | 12 | 26.49 |
| 253 | Laptop for Leroy | OE | 5/12/2020 | 12 | 1,157.51 |
| 254 | Laptop for Connor Trembley | OE | 9/2/2020 | 12 | 2,706.86 |
| 255 | | | | | |
| 256 | | | | | |
| 257 | Printer for Travis office | OE | 12/22/2020 | 12 | 406.06 |
| 291 | Monitor for Rondge | OE | 1/6/2021 | 12 | 372.35 |
| 292 | HP EliteBook 850 G7 15.6" Notebook for Leroy | OE | 2/24/2021 | 12 | 1,962.62 |
| 293 | HP ZBook Power G7 15.6" Mobile Workstation for Leroy | OE | 2/24/2021 | 12 | 2,299.93 |
| 294 | HP EliteBook 850 G7 15.6" Notebook for Carla | OE | 3/9/2021 | 12 | 1,933.14 |
| 295 | | | | | |
| | **Furniture** | | | | |
| 296 | wide format printer for the engineers to print drawings for machining. | OE | 5/18/2021 | 12 | 320.99 |
| 297 | Desk Organizer | OE | 9/29/2021 | 12 | 32.10 |
| | | | | | |
| 312 | Pressure Washer | OE | 4/20/2022 | 12 | 407.32 |
| 321 | Dell Computer for Shipping Area. | OE | 1/28/2022 | 12 | 318.89 |
| 322 | Buy and Set Up of David Xerri's computer | OE | 2/23/2022 | 12 | 3,102.78 |
| 323 | HP ZBook Fury 15.6 G8 Mobile Workstation- Tyler | OE | 4/26/2022 | 12 | 3,245.37 |
| 324 | | | | | |

| Asset # | Property Description | | Date In / Service | Mths | Cost |
|---|---|---|---|---|---|
| 325 | Mini PC AMD A6 1450(up to 1.4GHz), Mini Desktop PC + monitor + keyboard/mouse + UPS back up - ES... | OE | 4/26/2022 | 12 | 844.58 |
| 326 | Mini PC AMD A6 1450(up to 1.4GHz), Mini Desktop PC + monitor + keyboard/mouse + UPS back up - ES... | OE | 4/26/2022 | 12 | 844.58 |
| 327 | Laptop for Collin Rogers | OE | 5/25/2022 | 12 | 3,583.44 |
|  | Office electronics (various computers, monitors. Printer) | OE | 7/7/2023 | 6 | 9,183.75 |
|  |  |  |  |  | 68,900.14 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  | Software |  |  |  |  |
|  |  |  | Date In | 2023 |  |
| Asset # | Property Description |  | Service | Mths | Cost |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  | Website |  |  |  |  |
|  |  |  | Date In | 2023 |  |
| Asset # | Property Description |  | Service | Mths | Cost |
|  |  |  |  |  | 34,875.00 |
|  | **Furniture** |  |  |  |  |
|  |  |  |  |  |  |

| | | | | | |
|---|---|---|---|---|---|
| | Total Fixed Assets: | | | | 3,640,389.09 |

**Additional Assets:**

- Raw Materials
- Wheel Inventory

**EXHIBIT B**
**PREMISES**

93 Pioneer Industrial Boulevard
Jasper, Georgia 30143